**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN FOWLER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:07-0276** |
| **v.** | : | |
| **DALLAS BOROUGH,** | : | **(MUNLEY, D.J.)** |
| | | **(MANNION, M.J.)** |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION[1]

In this action, Plaintiff John Fowler filed, on February 12, 2007, an eight-count complaint against his former employer, defendant Dallas Borough (the "Borough"). Count I alleges that plaintiff was "regarded as disabled" by defendant and, thereby, defendant wrongfully discriminated against plaintiff in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Count II, also brought under the ADA, alleges that defendant retaliated against plaintiff for engaging in protected activity. Count III alleges defendant engaged in wrongful age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. Count IV, apparently brought under the ADEA (although mislabeled an ADA claim in the complaint), alleges that defendant retaliated against plaintiff for engaging in protected activity. Counts V through VIII mirror counts 1 through IV, except the former are asserted under state law, i.e., the Pennsylvania

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et seq*.

Before the Court is the Defendant, Dallas Borough's Motion for Summary Judgment (the "Motion"), (Doc. No. 19). The Motion has been fully briefed. *See* Defendant, Dallas Borough's Memorandum of Law in Support of its Motion for Summary Judgment (the "Opening Brief"), (Doc. No. 22); Defendant, Dallas Borough's Proposed Statement of Undisputed Facts, (Doc. No. 20); Plaintiff's Brief in Opposition to Summary Judgment (the "Opposition Brief"), (Doc. No. 24); Plaintiff's Response to Defendant, Dallas Borough's Statement of Undisputed Facts and Plaintiff's Counterstatement of Material Facts, (Doc. No. 23); Defendant, Dallas Borough's Reply Memorandum of Law in Support of its Motion for Summary Judgment, (the "Reply Brief"), (Doc. No. 28); Defendant, Dallas Borough's Response to Plaintiff's Counterstatement of Material Facts, (Doc. No. 29). Having considered the parties' filings, federal and state statutory law, case law, and persuasive scholarly authority, the Court, for the reasons elaborated below, will recommend **GRANTING** the motion in part and **DENYING** the motion in part.

## I.      FACTS AND PROCEDURAL BACKGROUND

Although the procedural posture does not appear to be in dispute, certain factual issues are disputed. The Court notes those disputes and, for the purpose of this motion, will consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party, i.e., the plaintiff, John Fowler. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

Plaintiff was born on June 11, 1944. He was hired by defendant, Dallas Borough, as a police officer in 1973, and in 1988 he was promoted to chief. Plaintiff alleges, and defendant denies, that defendant "ha[d] twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Age Discrimination in Employment Act of 1967, Pub. L. 90-202, 29 U.S.C. § 630(b) (making 20 calendar week rule a precondition for an ADEA claim). There is conflicting evidence in the record on this point.

Mayor Carroll took office in 2000. According to Fowler, during the Mayor's first term in office, "[t]he Mayor said [Fowler] was too old and [Fowler] made too much money," Fowler Dep. at 53:13-18, Def. Ex. 1, (Doc. No. 22-2 at 17). Fowler believed this statement illustrated the real reason the Defendant terminated Fowler. Fowler Dep. at 53:8-12. Likewise, Councilman Oliver, according to Fowler, "wanted to know when I was going to quit and get out of there." When Fowler indicated that he would stay until he was 65, Oliver stated "we'll make sure you get all your benefits if you leave right now." Fowler Dep. at 54:13-17. Defendant disputes the accuracy of plaintiff's recollections.

On or about November 1, 2002, Fowler sent a memorandum to Carroll indicating that Fowler's family physician, Dr. Latzko, placed Fowler on sick leave between November 4, 2002 and November 15, 2002 connected to "harassment and stress," and that Fowler would again visit Latzko on November 15, 2002 for a follow up visit when Fowler would be reevaluated.

The memorandum came with Dr. Latzko's note. *See* Pl. Ex. 6 & Ex. 7, (Doc. No. 24-2 at 18-21). Mayor Carroll responded by letter on November 14, 2002. Carroll stated that Latzko's note left unclear whether Fowler was actually sick. Carroll stated that Fowler could only take sick time if actually sick, as opposed to taking sick time for personal reasons unrelated to illness. Carroll required Latzko to provide a "specific explanation ... as to the reason for [Fowler's] absence from work ... [to name] a specific condition." Pl. Ex. 8, (Doc. No. 24-2 at 23-24). Furthermore, should Fowler intend to resume his duties as a police officer, Carroll required that his "physician [provide documentation] releasing [Fowler] to return to full duty without restriction," and further submit to a "fitness for duty examination" by a doctor selected by the defendant. *Id*. The Borough's doctor would determine if plaintiff was "mentally and physically capable of performing [his] full duties" and to determine "whether [Fowler] meet[s] the physical requirements set forth in the Municipal Police Officers' Education and Training Commission (MPOETC) guidelines." *Id*. Latzko provided the release, Pl. Ex. 9, (Doc. No. 24-2 at 26), and a follow up note detailing that Fowler was under his care for hypertension. Pl. Ex. 10, (Doc. No. 24-2 at 28). However, plaintiff refused to attend the fitness for duty examination because, he believed, "no one else ever had to go for a test like that," Fowler Dep. at 38:22-23, and because the "union [had] filed a grievance, *id*. at 38:14. As a result, Carroll issued a letter of reprimand for Fowler's direct disobedience to his prior order to attend the examination. Pl. Ex. 11, (Doc. No. 24-2 at 30). Between the time Carroll became mayor and

4

the time he was deposed on August 12, 2008, Carroll could only remember one occasion where he, Carroll, required a police officer to recertify under the MPOETC guidelines. Carroll Dep. at 59:1-18, Def. Ex. 2, (Doc. No. 22-2 at 53); *cf*. Doc. No. 24-3 at 30 (arbitrator's report noting that "The Borough asserts that this same requirement [to meet MPOETC guidelines] was applied to another police officer who was incapacitated due to a medical condition. This did not occur, however, until long after Chief Fowler had been discharged, and while this grievance was pending. The application of the MPOETC standards to Chief Fowler, in the first instance, was unprecedented."). Carroll claimed the requirement for Fowler to recertify was suggested by labor counsel's recommendation, *id*. at 58:16-14, but was not, as far as Carroll knew, required by any "provision" or Borough policy, *id*. at 60:13-21.

Thereafter, Fowler's union, as part of settling the grievance, directed Fowler to attend a fitness examination (or examinations) to be conducted by Doctors Kline and/or Raymond. Fowler Dep. at 58-59. After Dr. Raymond cleared plaintiff to return to work, defendant did not permit plaintiff to return to work "for a while," i.e., until March 10, 2003. *Id*. at 61:7. How long this period was is unclear from the briefing. Fowler believed that he was made to take these examinations in order to harass him.

Because Fowler had indicated that the sick time he requested was connected to "stress," the Borough Council was concerned that Fowler's judgment might be impaired. Oliver Dep. at 30:20-23, Def. Ex. 3, (Doc. No.

22-2 at 92). Likewise, Fowler's reference to stress led Carroll to conclude that Fowler was not "sound" and that the Borough Council should "make sure that [Fowler] was okay." Carroll Dep. at 64:17-23. However, Carroll could not explain how his concern was connected to his demand that Fowler meet the "physical requirements of the MPOETC exam." *Id*. at 64:24-25 to 65:1-2.

Prior to his March 10, 2003 return to work, Mayor Carroll changed Fowler's work schedule, but no other officer's schedule was similarly changed. Fowler Dep. at 63:4-7. Prior to the change, Fowler worked only day shifts, afterwards, he was assigned afternoons and evenings. Fowler Dep. at 63:17-19. Whereas other officers knew their schedule a year in advance, Fowler's varied week to week. Fowler Dep. at 62:6-9 & 64:17-20. Finally, Carroll required Fowler, instead of part time officers, to fill in for other officers when the officers took their vacations. Carroll Dep. at 33:5-8. Carroll stated that this policy was instituted to save money. *Id*. at 32:5-11.

Over the course of the next several months, Carroll assigned Fowler new duties. Likewise, Carroll instituted new policies. Carroll objected by letter to Fowler's, openly, tape recording one of their meetings. Carroll issued several reprimands in regard to Fowler's conduct. On July 10, 2003, plaintiff's counsel wrote defendant's counsel stating that plaintiff planned to file administrative charges of disability and age discrimination unless the dispute between the parties were resolved. Pl. Ex. 23, (Doc. No. 24-2 at 57).

On or about July 21, 2003, Fowler injured his shoulder in a non-work related accident. Pl. Ex. 25, (Doc. No. 24-2 at 64 (Carroll letter) & 73 (Kim

letter)); (Doc. No. 24-3 (Carroll calling it a motorcycle accident)); (Doc. No. 24-2 at 11 (arbitrator calling it an all terrain vehicle accident)). On July 24, 2003, Dr. Latzko wrote a note stating that because of Fowler's shoulder injury, Fowler was unable to perform his duties and he should be excused until "further notice." Def. Ex. 12, (Doc. No. 22-3 at 47). Latzko's note was forwarded on to Carroll on or about July 27, 2003. Def. Ex. 13, (Doc. No. 22-3 at 49). Carroll responded by letter on August 12, 2003. Carroll again required that before Fowler returned to duty he meet MPOETC fitness standards. *Id*. at 49-50. Furthermore, while acknowledging that the relevant labor agreement was silent in regard to the number of sick days Fowler might take, Carroll stated that the Borough would grant Fowler no more that 18 days per year of paid sick leave. *Id*. at 49. When deposed and asked if any such restriction had been placed on any other Borough police officers, Carroll stated: "I don't believe there was any other employees that were off like this." Carroll Dep. at 87:6-7. And when asked if "other employees of the Dallas Police Department ... had been off for two or three weeks [like Fowler]," Carroll stated: "No, sir. They're younger. They didn't take time like that." *Id*. at 87:16-20.

After his July 2003 injury, plaintiff stopped reporting to work. On May 13, 2004, Carroll sent Fowler a pre-honorable discharge notice. Pl. Ex. 25, (Doc. No. 24-2 at 64). The gravamen of the notice was that Fowler's most recent fitness for duty examination, on April 16, 2004 with Dr. Naidu, resulted in a report which concluded that Fowler "suffer[s] from a physical condition which

precludes [Fowler] from performing [his] full duties without restriction ... and will prevent [Fowler] from performing [his] full duties without restriction in the reasonable foreseeable future." *Id*. Fowler was invited to submit a written response by the morning of May 18, 2004, including any "medical documentation or other information which indicates that [Fowler] will be capable of performing [his] full duties without restriction in the reasonably foreseeable future." *Id.*

> Dr. Kim, Fowler's surgeon, on a letter dated May 18, 2004, wrote:

> Mr. Fowler underwent a rotator cuff repair. During his rehabilitation, he has had some difficulty with range of motion, but has made slow but progressive gains. I feel that, at some point in the future, he stands a chance of returning to his pre-injury level. This would allow him to return to his previous job of Chief of Police.

Def. Ex. 15, (Doc. No. 22-3 at 56). Carroll responded with a letter to Kim requiring Kim to respond on his office letterhead (as opposed to plain white blank stationery) and to indicate whether Fowler could complete certain physical tasks (apparently the MPOETC requirements), and if he can not do so now, inquiring if "[Fowler] ever be able to [perform those tasks]?" Pl. Ex. 16, (Doc. No. 22-3 at 58). In his deposition, Carroll indicated that officers were made to meet these requirements when they become Act 120 certified, but once so certified they are not asked to meet the requirements a second time, even if they gain weight, become less well physically conditioned, or acquire a medical condition that did not otherwise require their missing work. Carroll Dep. at 92:24 to 93:22. Fowler was required to submit to these tests, according to Carroll, because he had "been off for medical reasons." *Id*. at

92:24-25 to 93:1-4. According to Carroll, the Borough acted on the advice of labor counsel in imposing this requirement, and Carroll was of the belief that "when you've been out injured or something, I don't really see where it is a problem [to require the officer to meet the MPOETC standards again]." *Id.* at 94:3-7.

Dr. Kim wrote a follow up letter on May 26, 2004. The letter merely stated that he could not "state with certainty that [Fowler] will not be able to return to his pre-injury status" and that Fowler has the "potential" to meet the physical standards laid out in Carroll's prior letter. Pl. Ex. 28, (Doc. No. 24-2 at 73).

On June 17, 2004, Oliver, as Borough Council President, informed Fowler by letter that he had been granted an honorable discharge. Pl. Ex. 29, (Doc. No. 24-2 at 75-77). Fowler, who was 60[2] at the time of his discharge, was replaced by James Drury, who was in his mid to late 40s. Fowler Aff. at 1, Pl. Ex. 1, (Doc. No. 24-2 at 2).

Finally in an arbitration action between Dallas Borough Police Department (Police Bargaining Unit)[3] and Dallas Borough, the arbitrator found

---

[2] The arbitrator in the related action, described *infra*, indicated that Fowler was 59 at this time. (*See* Doc. No. 24-3 at 28.)

[3] Defendant argues that the arbitration action was initiated by Fowler by filing a grievance under the applicable collective bargaining agreement. But defendant points to no record evidence or provision of the agreement establishing this point. Opening Brief at 9. Importantly, even if Fowler initiated the proceedings, the caption on the arbitration does not indicate that Fowler was a party to them or controlled the course of the litigation.

the termination wrongful, i.e., not supported by just cause, Opening Brief at 8-9, and directed the Borough to offer Fowler immediate reinstatement along with other remedies to make Fowler whole, Pl. Ex. 31 at 45, (Doc. No. 24-3 at 37). However, the arbitrator was "not convinced that age discrimination occurred here," Pl. Ex. 31 at 36, (Doc. No. 24-3 at 28). The arbitrator's award was affirmed both by the Court of Common Pleas of Luzerne County, and, on appeal, by the Commonwealth Court. Opening Brief at 9-10, (Doc. No. 22 at 13-14). (Apparently an appeal to the Pennsylvania Supreme Court is pending. *Id*.)

Plaintiff filed on September 9, 2003, a complaint with Pennsylvania Human Relations Commission (the "PHRC"), and an amended complaint followed. Both complaints were dual filed with the Equal Employment Opportunity Commission (the "EEOC"). The PHRC dismissed both complaints; the EEOC issued Fowler a notice of right to sue. Opening Brief at 10-11, (Doc. No. 22 at 14-15). Thereafter Fowler filed this action in the District Court.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v.*

*Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny,*

[139 F.3d 386, 393 (3d Cir. 1998)](quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *[Celotex Corp.](#)*, 477 U.S. at 322-23; *[Jakimas v. Hoffman La Roche, Inc.](#)*, 485 F.3d 770, 777 (3d Cir. 2007).[4]

## III.  LEGAL ANALYSIS

Defendant, Dallas Borough, seeks summary judgment on a variety of legal theories. This report and recommendation discusses each of defendant's legal positions in turn.

### A.  300-Day Filing Period

Defendant argues in its opening brief:

> ***ANY ACT OR EVENT WHICH OCCURRED PRIOR TO NOVEMBER 14, 2002 IS NOT ACTIONABLE.***
> A plaintiff is required to file an employment discrimination charge with the EEOC within 180 or 300 days after an "allegedly unlawful employment practice occurred." *[Nat'l Passenger Corp. v. Morgan](#)*, 536 U.S. 101, 105 (2002). Every discrete event that

---

[4] If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material negating the opponent's claim," *[Celotex](#)*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court --that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

> forms the basis of a discrimination claim must be included in a timely EEOC charge. *Id.* Discrete discriminatory acts that occur outside the 300-day period are not actionable. *Id.*
>
> Plaintiff filed his first Complaint with the PHRA and allegedly dual filed with the EEOC on September 9, 2003. *As such, any act or event which forms the basis of any of Plaintiff's claims and occurred prior to or about November 14, 2002 is not actionable and defendant is entitled to Summary Judgment.*

Opening Brief at 13-14, (Doc. No. 22 at 17-18) (emphasis added).

Plaintiff argues that the 300 day filing period puts events occurring on November 14, 2002 within the filing period. The Court agrees. By the Court's calculation events as early as November 13, 2002 are actionable, but not prior events. (Whether such prior events might come in for evidentiary purposes at trial in regard to proving or disproving actionable claims within the filing period is an issue properly left for determination at trial.) In regard to any of plaintiff's claims tied to alleged defendant conduct occurring prior to November 13, 2002, defendant is entitled to summary judgment.

In defendant's reply brief, defendant argues that it is entitled to summary judgment in regard to any state law claim under the PHRA filed more than 180 days after the alleged actionable event, i.e., any alleged wrongful conduct occurring prior to March 13, 2002 is not actionable under state law. Reply Brief at 3, (Doc. No. 28 at 3). Defendant's opening brief specifically sought relief under the 300 day filing requirement, as stated in the section's title and in the specific claim for relief at the end of that brief section. The PHRA was not mentioned, nor was the March 13, 2002 cutoff date discussed. Where, as here, an argument is only made in a reply brief, the argument is waived (at least for the purpose of this motion). *See Voci v. Gonzales, 409 F.3d 607, 609*

13

n.1 (3d Cir. 2005) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue ... will not suffice to bring that issue before this court"); *Dreyer v. Sheaffer*, Civ. A. No. 3:08-1132, 2009 WL 917829, at *3 (M.D. Pa. Apr. 2, 2009) ("[A] district court need not address issues raised for the first time in a reply brief. A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues.") (internal citations and quotations marks omitted).

## B.    Res Judicata

Defendant argues that plaintiff's discrimination action is barred by *res judicata* because "Fowler filed a grievance in accord with the Collective Bargaining Agreement, which covered discipline, and discrimination." Opening Brief at 15. The parties agree that for *res judicata* to apply, Fowler must have been a party to the prior arbitration action. Defendant argues that Fowler was such a party, Opening Brief at 15; plaintiff argues that he was not, Opposition Brief at 11-12. The reality is more complex. Fowler may have initiated these proceedings by filing a grievance, but he does not appear on the caption of the arbitrator's opinion, Def. Ex. 20, (Doc. No. 22-4 at 5 *et seq*.), nor does he appear either on the caption of the opinion of the Common Pleas Court (which affirmed the arbitrator's opinion), Pl. Ex. 21, (Doc. No. 22-4 at 51 *et seq*.), or on the caption of the opinion of the Commonwealth Court (which affirmed the decision of the Common Pleas Court), Pl. Ex. 22, (Doc. No. 22-4 at 57 *et seq*.). In short, Fowler does not appear to have been a formal party to the

prior proceeding.

It is possible that Fowler was a functional party to the prior action, i.e., he was in privity with the plaintiff in the arbitration action: Dallas Borough Police Department (Police Bargaining Unit). If Fowler were in privity with the Police Bargaining Unit, then it may be fair to bind him to the prior decision. *Allen v. McCurry*, 449 U.S. 90, 94(1980) (holding that *res judicata* precludes relitigation by "parties or their privies"). However, such a position requires a factual basis, but defendant makes no such factual showing. *Cf. Huber v. Taylor*, 532 F.3d 237, 250 (3d Cir. 2008) (noting "highly factual nature of a privity analysis"). *But see Monahan v. City of N.Y. Dep't of Corrections*, 10 F. Supp. 2d 420 (S.D.N.Y. 1998), *aff'd* 214 F.3d 275, 285 (2d Cir. 2000) (holding that corrections officers can be precluded from relitigation under res judicata where their "sole and exclusive collective bargaining representative for the unit" had already settled the same claim); *id*. at 288 (same).

Even assuming Fowler was in privity with the Police Bargaining Unit, it appears that *res judicata* does not apply. In *McDonald v. City of West Branch*, 466 U.S. 284, 287 (1984), the Supreme Court held that an unreviewed arbitration award is not entitled to the full faith and credit required for state court judgments. *Id*. at 287; *see also* 28 U.S.C. § 1738. On the other hand, "[w]hen a state court has affirmed an arbitration award, different considerations apply because then the issue is the preclusive effect to be given to a state court judgment." *N.L.R.B. v. Yellow Freight Sys., Inc.*, 930 F.2d 316, 319 (3d Cir. 1991). The state court judgments will receive

15

preclusive effect if the party sought to be bound actually litigated in the first action or could have litigated in the first action, the issues raised in the second action. *See Handley v. Phillips*, 715 F. Supp. 657, 664 (M.D. Pa. 1989). Thus even if Fowler could have litigated his statutory discrimination claims before the arbitrator, as opposed to merely his claims under the collective bargaining agreement, unless he could also litigate his statutory claims on appeal to the state courts *res judicata* does not apply. Here, the state courts' scope of review of the arbitrator's decision was extremely narrow and did not go to the merits of the underlying statutory discrimination claim. *See* Court of Common Pleas Opinion at 2 (noting "stringent scope of review" including "(1) the jurisdiction of the arbitrator, (2) the regularity of the proceedings, (3) an excess of the arbitrator's powers, and (4) deprivation of constitutional rights"), (Doc. No. 22-4 at 54); Commonwealth Court Opinion at 8 (same), (Doc. No.22-4 at 65). Because Fowler neither litigated nor could litigate his statutory claims before the state courts, *res judicata* should not apply. *Handley v. Phillips*, 715 F. Supp. at 665-66.

## C.    ADA Liability

Plaintiff's position is that he was "regarded" as disabled by the defendant. To be regarded as disabled under the ADA it is not enough that the employer perceive some impairment or condition. Rather the impairment or condition must substantially limit a "a major life activit[y]" of working. 42 U.S.C. § 12102. "[T]o be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a

particular job." *Murphy v. United Parcel Serv., Inc*., 527 U.S. 516, 523 (1999); Opening Brief at 18 (citing *Murphy, supra*).

Defendant argues that although the defendant (i.e., the Board and its members) had concerns in regard to Fowler's fitness "as a police officer," Opening Brief at 19, those concerns did not relate to any major life activity or any ability of Fowler to do other jobs. If this characterization is correct, then defendant is not liable under the ADA. Plaintiff, on the other hand, argues that the defendant regarded Fowler's ability to think as impaired, Opposition Brief at 12, and cites record evidence to that effect. For example, in response to the question: "Did you think ... this indicated that [Fowler] was impaired in his ability to think or exercise judgment?," John Oliver, a council member, stated, "We were concerned." Oliver Dep. at 30:20-24. Oliver's concern seems to be directed to more than Oliver's ability to do a particular job, police chief or police officer, but goes directly to a major life activity, as required by the ADA. Defendant argues in its brief that its concern (i.e., the council members' concern) was specifically tied to Fowler's "fitness as a police officer," but defendant cites no record evidence to that effect. The Court is of the view that Oliver's statement above, and other such statements in the record, create (at least) a jury question under the summary judgment standard as to whether the defendant regarded plaintiff as disabled, i.e., disabled in regard to the major life activity of thinking and exercising judgment in the work place.

**D.    Defendant's Liability For Retaliation Under The ADA**

Defendant argues that plaintiff has insufficient evidence to establish a

prima facie retaliation case. Opening Brief at 20-21. "[I]n order to establish a prima facie case of illegal retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogelman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002) (quotation marks omitted).

Here the protected activity took two forms. First, it included a July 10, 2003 letter from plaintiff's counsel to the defendant warning that he might file charges of age and disability discrimination. *See, e.g.*, Pl. Ex. 23 at 1-2, (Doc. No. 24-2 at 57-58); *Walsh v. Wal Mart Stores, Inc*., 200 Fed. Appx. 134, 136 (2006) (analyzing temporal proximity in terms of the time between plaintiff sent a hand-written letter to management alleging discrimination and the time plaintiff was terminated by management) (NOT PRECEDENTIAL). Second, it included plaintiff's filing his original and amended complaint on September 9, 2003 and on December 4, 2004 before the PHRC.

Plaintiff focuses on two adverse actions. First, on August 12, 2003, defendant imposed a new policy limiting paid sick leave to 18 days. Second, the defendant discharged Fowler on June 17, 2004.

Thus, the only substantial question is whether plaintiff can point to any record evidence of a "causal connection" between the adverse action and a protected employee activity, e.g., the first-in-time filing (September 9, 2003) before the PHRC. Evidence of a causal connection "may depend on three

types of evidence: temporal proximity, a pattern of antagonism by the employer in response to the protected activity, and the employer's knowledge of that activity. While evidence of only one factor is generally insufficient to establish causation, evidence of all three is not necessary, so long as the claim reasonably supports an inference of causation." *Walsh*, 200 Fed. Appx. at 136. Plaintiff has some record evidence of each type, thereby precluding summary judgment on this count.

First, there was roughly nine months between the filing of the first complaint and the adverse termination. The adverse action lacks temporal proximity. On the other hand, the defendant's imposition of the new sick leave policy occurred a mere six weeks after plaintiff sent his letter alleging disability and age discrimination by the defendant. Second, prior to his termination, there was a long pattern of antagonism between the parties. *Cf.* Arbitrator's Opinion at 36 ("The Borough, *while acknowledging that there was friction between Mayor Timothy Carroll and Chief Fowler* ...."), Def. Ex. 20 at 36, (Doc. No. 22-4 at 41). Third, in addition to the July 10, 2003 letter directed to the defendant, the defendant in this action was the named defendant in both the complaints before the PHRC. That indicates that the employer-defendant had actual knowledge of the protected activity, on all three occasions. Thus there seems to be sufficient reason to find a jury question in regard to a "causal connection."

### E. ADEA Claim

Defendant puts forward two defenses in regard to Fowler's ADEA

19

claim.[5] This report and recommendation discusses each in turn.

 1. Is Defendant An "Employer" Under the ADEA?

Both parties agree that a defendant is liable under the ADEA only if it has "twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b); Opening Brief at 22; Opposition Brief at 17; Reply Brief at 10-11.

Plaintiff puts forward his own affidavit attesting to defendant employing some 40 persons during the relevant period, i.e., "every year from at least 2002 to the present." Pl. Ex. 1, (Doc. No. 24-2 at 2).

Defendant puts forward the affidavit of Tracey Carr, the Borough Manager. Carr asserts that during 2006, 2007 and 2008, the defendant "employed less than 20 people during any 20 consecutive calendar weeks." Def. Ex. 27, (Doc. No. 22-4 at 109), excluding "elected officials, which are the Borough Council, Mayor, and Tax Collector." 29 U.S.C. § 630(f) ("The term 'employee' means an individual employed by any employer except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to

---

[5] The Court notes that the legal standard for evaluating an ADEA claim is now controlled by *Gross v. FBL Fin. Servs., Inc*., No. 08-441, --- U.S. ----, 129 S. Ct. 2343 (June 18, 2009) (Thomas, J.) (holding that a plaintiff bringing an ADEA disparate-treatment claim must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action).

the exercise of the constitutional or legal powers of the office."). Apparently, there are 7 members of the council, one mayor, and one tax collector. Pl. Ex. 1, (Doc. No. 24-2 at 2). Thus, even if one excludes these 9 employees from the 40 listed on plaintiff's affidavit, plaintiff has put forward evidence that the defendant has 31 employees, well over the 20 necessary. Defendant also argues that plaintiff wrongly counts "independent contractors" and "seasonal workers," which it argues do not belong in the calculation. But defendant fails to show which, if any, of the remaining 31 employees put forward by plaintiff fall into those categories, even assuming they are excluded from the calculation. Finally, defendant's affidavit covers the years 2006, 2007, and 2008. But the relevant "calendar year," 29 U.S.C. § 630(b), as used by the statute, is not the "year" in which the dispute is adjudicated, or the "year" in which the federal complaint is filed; rather, "[t]he current year is the year in which the alleged violation occurred, and the applicable period does not cease on the date of the violation, but rather continues until the end of the calendar year." *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 580 (7th Cir. 1993); *EEOC v. Hesco Parts. Corp.*, 57 Fed. Appx. 518, 522 (3d Cir. 2003) (quoting *Rogers, supra*, approvingly). Thus, the relevant "calendar years" do not include 2006 through 2008, as in the Carr affidavit, but include the years 2002 through 2004, as in the Fowler affidavit. It follows that defendant has failed to establish that there is no genuine issue of material fact in regard to whether defendant is an "employer" under the ADEA. Thus the Court will not recommend granting summary judgment on this basis.

21

## 2. Was Plaintiff Qualified For His Position?

Defendant argues that plaintiff has failed to make a prima facie showing of age discrimination. To make a prima facie case, plaintiff must put forward evidence "that (I) the plaintiff was a member of the protected class, i.e., was 40 years of age or older (*see* 29 U.S.C. § 631(a)), (ii) that the plaintiff was discharged, (iii) that the plaintiff was qualified for the job, and (iv) that the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (*en banc*). "If the plaintiff cannot do so, the defendant is entitled to judgment as a matter of law." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 n.4 (3d Cir. 1999).

Defendant argues that plaintiff was terminated because of his medical condition, not his age, i.e., he was terminated because he was not qualified. Plaintiff's position is that "[Fowler] was qualified for his position, as he provided medical documentation of his sick leave status, and in every case, provided medical clearance for his return to work." Opposition Brief at 18, (Doc. No. 24 at 22). *However, plaintiff makes no citations to the record to establish that Fowler was, in fact, qualified to do his job.* The two letters sent by Dr. Kim to the defendant are equivocal in this regard and, even if believed, do not establish a prima facie case. Pl. Ex. 28, (Doc. No. 24-2 at 73); Def. Ex. 15, (Doc. No. 22-3 at 56). Thus ths Court is of the view that defendant is entitled to judgment as a matter of law.

### F.    Defendant's Liability For Retaliation Under The ADEA

Defendant advances the same arguments in regard to retaliation under the ADEA as it did for retaliation under the ADA. *See* Section III[D], *supra*. For the reasons elaborated above, just as defendant's position was rejected in regard to the ADA, it is also rejected in regard to the ADEA.

### G.    Plaintiff's State Law PHRA Claims

As elaborated above, the Court will recommend denying the defendant's motion for summary judgment in regard to plaintiff's ADA claims and retaining supplemental jurisdiction of the state law PHRA claims. *See* 28 U.S.C. §1367.

Both plaintiff and defendant agree that the same legal standards and analysis applicable to an ADA claim applies to a PHRA claim (alleging discrimination based on disability). *See Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 306 (3d Cir.1999) (citing *Kelly v. Drexel Univ*., 94 F.3d 102, 105 (3d Cir.1996)). Therefore, the court will consider both claims together. *Cf. Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 n.6 (3d Cir. 2004). Likewise, both parties agree that the same analysis that applies to an ADEA claim applies to a PHRA claim (alleging disability based on age). Opening Brief at 25-26, (Doc. No. 22 at 29-30); Opposition Brief at 19, (Doc. No. 24 at 23). It follows that because this Court recommends granting defendant summary judgment in regard to Count 3, the underlying ADEA claim, defendant should be granted summary judgment in regard to Count 7, the age discrimination claim brought under the PHRA.

## IV.  CONCLUSION

For the reasons elaborated above, **IT IS RECOMMENDED THAT**: the Defendant, Dallas Borough's Motion for Summary Judgment, (Doc. No. 19), be **GRANTED** in part and **DENIED** in part. Specifically, the Court recommends:

(1) **GRANTING** defendant summary judgment with respect to the underlying ADEA count, (Count III), and the coordinate count under the PHRA, (Count VII); and,

(2) **DENYING** the motion in all other regards.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: July 27, 2009**

O:\shared\REPORTS\2007 Reports\07-0276-01.wpd

24