**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN FOWLER,
      **Plaintiff**

    **v.**

BOROUGH OF DALLAS,
      **Defendant**

:
:
:
:
:
:
:
:

**No. 3:07cv0276**

**(Judge Munley)**

## MEMORANDUM

Before the court are plaintiff's and defendant's objections (Docs. 33, 34) to the report and recommendation (Doc. 30) of Magistrate Judge Malachy E. Mannion that defendant's motion for summary judgment (Doc. 19) be denied in part and granted in part. Having been fully briefed, the matter is ripe for disposition.

**Background**[1]

Plaintiff John Fowler ("Fowler") was born on June 11, 1944. (Fowler Dep. at 8:24-25, Def. Ex. 1, (Doc. 22-2 at 5) (hereinafter "Fowler Dep.")). Defendant Dallas Borough ("Dallas") hired Fowler as a police officer in 1973, and made him chief in 1988. (Fowler Dep. at 20:25-22:5). Fowler alleges, and Dallas denies, that defendant "ha[d] twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Age Discrimination in Employment Act of 1967, Pub. L. 90-202, 29 U.S.C. § 630(b) (making 20 calendar week rule a precondition for an ADEA claim) (Fowler Aff., Pl. Ex. 1, (Doc. 24-2 at 2)); (Carr Aff., Def. Ex. 27, (Doc. 22-4 at 109)).

Timothy J. Carroll ("Carroll") took office as Mayor of Defendant Dallas

---

[1] Although the procedural posture does not appear to be in dispute, certain factual issues are disputed. The court notes those disputes and, for the purpose of this motion, will consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party, Plaintiff John Fowler. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

Borough in 2000.  (Carroll Dep. at 16, Def. Ex. 2 (Doc. 22-2 at 42) (hereinafter "Carroll Dep.")) .  According to Fowler, during the mayor's first term in office, the mayor told him he "was too old and [ ] made too much money." (Fowler Dep. at 53).  Likewise, according to Fowler, Councilman John Oliver ("Oliver"), "wanted to know when [Fowler] was going to quit and get out of there."  When Fowler indicated that he would stay until he was sixty-five, Oliver responded, "we'll make sure you get all your benefits if you leave right now."  (Fowler Dep. at 54).  Defendant disputes the accuracy of plaintiff's recollections.

On or about November 1, 2002, Fowler sent a memorandum to Carroll indicating that Dr. Latzko, Fowler's family physician, placed Fowler on sick leave between November 4, 2002 and November 15, 2002 related to "harassment and stress," and that Fowler would again visit Dr. Latzko on November 15, 2002 for reevaluation.  (Pl. Ex. 6, (Doc. 24-2 at 18-19)).  The memorandum included Dr. Latzko's note recommending leave for "health reasons."  (Pl. Ex. 7, (Doc. 24-2 at 20-21)).

Carroll responded by letter on November 14, 2002, stating that Dr. Latzko's note left unclear whether Fowler was actually sick.  (Pl. Ex. 8 (Doc. 24-2 at 23-24).  Carroll pointed out that Fowler could only take sick time if actually sick– not for personal reasons unrelated to illness.  Carroll requested "a more specific explanation from Dr. Latzko as to the reason for [Fowler's] absence from work . . . [setting] forth his diagnosis."  (Id.)  Carroll placed preconditions upon Fowler returning to work, requiring that (1) Fowler's "physician [provide documentation] releasing [Fowler] to return to full duty without restriction," and that (2) he submit to a "fitness for duty examination" by a doctor selected by the defendant.  (Id.)  The Borough's doctor would determine if plaintiff was "mentally and physically capable of performing [his] full duties" and determine "whether [Fowler] meet[s] the

physical requirements set forth in the Municipal Police Officers' Training and Education Commission [sic] (MPOETC) guidelines." (Id.)

Because Fowler had indicated that his leave was connected to "stress," the Dallas Borough Council was concerned that Fowler's ability to think or exercise judgment might be impaired. (Oliver Dep. at 30:20-23, Def. Ex. 3, (Doc. 22-2 at 92) (hereinafter "Oliver Dep.")). Likewise, Fowler's reference to stress led Carroll to be concerned that Fowler was not "sound" and that the Borough Council should "make sure that [Fowler] was okay." (Carroll Dep. at 64). However, Carroll could not explain how his concerns for Fowler's mental soundness would be resolved by imposing a physical-fitness examination (Id. at 64 to 65).

On November 18, 2002, Dr. Latzko provided the release back to work (Pl. Ex. 9, (Doc. 24-2 at 26)), and a note[2] specifying that Fowler was, and remained, under his care for hypertension. (Pl. Ex. 10, (Doc. 24-2 at 28)). However, Fowler refused to undergo the fitness for duty examination because, "no one else ever had to go for a test like that," (Fowler Dep. at 38), and because the "union [had] filed a grievance."

(Id. at 38).[3] On December 3, 2002 Carroll issued a letter of reprimand for Fowler's refusal to attend his scheduled examination. (Pl. Ex. 11, (Doc. 24-2 at 30)). Between the time Carroll became mayor and the time he was deposed on August 12, 2008, Carroll could only remember one other occasion where he required a police officer to re-certify under the

_____

[2] Dr. Latzko's note is dated October 18, 2002.

[3] Though Fowler states he failed to attend the examination because his union had filed a grievance, the record indicates that it was not until January 21, 2003 (after Carroll's reprimand for failure to attend) that his claims were grieved. (Pl. Ex. 12 (Doc. 24-2 at 33)).

MPOETC guidelines or required a physician attest to such ability. (Carroll Dep. at 59:; cf. Doc. 24-3 at 30 (arbitrator noting that re-certification was then unprecedented)). Carroll claimed that the requirement for Fowler to re-certify was suggested by labor counsel's recommendation, though it was not, to Carroll's knowledge, required by any "provision" or Borough policy. (Carroll Dep. at 58, 60).

Thereafter, Fowler's union, in settling the grievance, directed him to attend a fitness examination conducted by Doctors Kline and Raymond (a neuropsychologist). (Fowler Dep. at 58-59). After Drs. Kline and Raymond cleared Fowler to return to work, Dallas did not permit him to return to work "for a while," until March 11, 2003. (Id. at 61). It is unclear from the record on what date Drs. Kline and Raymond issued their evaluations to Dallas.

At some point during this period, Carroll changed Fowler's work schedule, but no other officer's schedule was similarly changed. (Fowler Dep. at 63). Prior to the change Fowler worked only day-shifts, afterwards he was assigned afternoons and evenings. (Fowler Dep. at 63). While other officers knew their schedule a year in advance, Fowler's varied week-to-week. (Fowler Dep. at 62, 64). Finally, Carroll required Fowler, instead of part-time officers, to fill in for officers on vacation. (Carroll Dep. at 33). Carroll stated that this policy was instituted to save money, which Fowler disputes. (Id. at 32; Fowler Dep. at 63 to 64).

On Fowler's first day back to work after taking leave for hypertension, he and Carroll had a meeting which Fowler openly tape-recorded. Carroll later objected by letter to Fowler taping the meeting. (Carroll Letter, March 14, 2003, Pl. Ex. 14 (Doc. 24-2 at 38)). Over the next several months, Carroll assigned Fowler new duties and instituted new policies. (Carroll

Letter, March 24, 2003[4], Pl. Ex. 15 (Doc. 24-2 at 40); Moskovitz Letter, June 27, 2003[5], Pl. Ex. 21 (Doc. 24-2 at 53)).  Carroll issued several reprimands in regard to Fowler's conduct.  (Carroll Letter, April 22, 2003[6], Pl. Ex. 17 (Doc. 24-2 at 45); Carroll Letter, June 17, 2003[7], Pl. Ex. 20 (Doc. 24-2 at 51)  On July 10, 2003 plaintiff's counsel wrote to defendant's counsel stating that plaintiff planned to file administrative charges of disability and age discrimination unless the dispute between the parties was resolved.  (Pl. Ex. 23, (Doc. 24-2 at 57)).

On or about July 21, 2003, Fowler injured his shoulder in a non-work-related accident[8]. (Pl. Ex. 25, (Doc. 24-2 at 64); Pl. Ex. 28 (Doc. 24-2 at 73).  On July 24, 2003, Dr. Latzko wrote a note stating that because of Fowler's shoulder injury, Fowler was unable to perform his duties and that

---

[4] Assigning Fowler tasks "in addition" to normal duties, including (1) directing Fowler to log his daily activities by half-hour increments, including recording patrol time and mileage; (2) establishing an officer evaluation system; (3) establishing a departmental media-release policy; and (4) retrieving part-time portable radios.

[5] Revising assignment of police vehicles.

[6] Reprimanding Fowler for prematurely implementing a traffic study which Carroll considered inconsistent with their April 18, 2003 meeting.

[7] Reprimanding Fowler for taking an insubordinate tone with Carroll in his April 23, 2003 memo (Pl. Ex. 18, (Doc. 24-2 at 47) (Denying that the traffic study was inconsistent with Carroll's instructions; suggesting that Carroll be more clear; and opining that Carroll need not threaten him with disciplinary actions).

[8] Plaintiff Fowler's accident is alternatively described as a motorcycle accident or all terrain vehicle (ATV) accident.  (Pl. Ex. 31, (Doc. 24-2 at 11) (arbitrator calling it a motorcycle accident); Def. Ex. 13, (Doc. 22-3 at 49) (Carroll calling it an ATV accident).

he should be excused "until further notice."  (Def. Ex. 12, (Doc. 22-3 at 47).
Latzko's note was forwarded on to Carroll on or about July 27, 2003.  (Def.
Ex. 13, (Doc. 22-3 at 49)).

Carroll responded by letter on August 12, 2003.  (Id.)  Carroll again
required that before Fowler returned to duty he meet MPOETC fitness
standards. (Id. at 49-50).  Furthermore, while acknowledging that the
relevant labor agreement was silent on the number of sick days Fowler
might take, Carroll stated that the Borough would grant Fowler no more
that eighteen (18) days per year of paid sick leave.  (Id. at 49).  When
deposed and asked if any such restriction had been placed on any other
Borough police officers, Carroll stated, "I don't believe there was any other
employees that were off like this." (Carroll Dep. at 87).  Answering whether
"other employees of the Dallas Police Department . . . had been off for two
or three weeks [like Fowler]," Carroll replied, "[n]o, sir.  They're younger.
They didn't take time like that."  (Id.)

After his July 2003 injury, Fowler stopped reporting to work.  On May
13, 2004 Carroll sent Fowler a "Pre-Honorable Discharge Notice."  (Pl. Ex.
25, (Doc. 24-2 at 64)).  The import of the notice was that Fowler's most
recent fitness for duty examination, on April 16, 2004 with Dr. Naidu,
resulted in a report which concluded that Fowler "suffer[s] from a physical
condition which precludes [Fowler] from performing [his] full duties without
restriction ... and [would] prevent [Fowler] from performing [his] full duties
without restriction in the reasonable [sic] foreseeable future."  (Id.)  Carroll
invited Fowler to submit a written response by May 18, 2004, including any
"medical documentation or other information which indicates that [Fowler
would] be capable of performing [his] full duties without restriction in the
reasonably foreseeable future."  (Id.)

Dr. Kim, Fowler's surgeon, in a letter dated May 18, 2004, wrote:

> Mr. Fowler underwent a rotator cuff repair. During his rehabilitation, he has had some difficulty with range of motion, but has made slow but progressive gains. I feel that, at some point in the future, he stands a chance of returning to his pre-injury level. This would allow him to return to his previous job of Chief of Police.

(Def. Ex. 15, (Doc. 22-3 at 56)). Carroll responded with a letter to Dr. Kim requiring him to respond on office letterhead (as opposed to blank stationery) and to indicate whether Fowler could presently complete certain physical tasks (matching the fiftieth percentile of the MPOETC standards for males aged fifty to fifty-nine attached to Carroll's Letter of August 12, 2003, excepting "sit and reach"), and if he could not yet do so, inquiring whether "[Fowler would] ever be able to [perform those tasks]?" (Pl. Ex. 16, (Doc. 22-3 at 58)). In his deposition, Carroll indicated that officers were made to meet these requirements when they become Act 120 certified, but that they are not asked to meet the requirements a second time, even if they gain weight, get out of shape, or acquire a medical condition that did not require their missing work. (Carroll Dep. at 92 to 93). Fowler was required to submit to these tests, according to Carroll, because he had "been off for medical reasons." (Id. at 92 to 93). According to Carroll, the Borough acted on the advice of labor counsel in imposing this requirement, and Carroll believed that "when you've been out injured or something, [he didn't] really see where it is a problem" to require re-certification. (Id. at 94).

Dr. Kim wrote a follow up letter on May 26, 2004. He could not "state with certainty that [Fowler] will not be able to return to his pre-injury status" and that Fowler has the "potential" to meet the physical standards laid out in Carroll's prior letter. (Pl. Ex. 28, (Doc. 24-2 at 73)).

On June 17, 2004, Oliver, as Borough Council President, informed Fowler by letter that he had been granted an honorable discharge. (Pl. Ex.

7

29, (Doc. 24-2 at 75-77)). Fowler, who was sixty years old at the time of his discharge, was replaced by James Drury, who was in his mid to late forties. (Fowler Aff. at 1, Pl. Ex. 1, (Doc. 24-2 at 2)).

Finally, in an arbitration action between the Dallas Borough Police Department (Police Bargaining Unit) and Dallas Borough, the arbitrator found Fowler's termination wrongful (not supported by just cause) and directed the borough to offer Fowler immediate reinstatement along with other remedies to make Fowler whole. (Arbitrator's Award, at 43, 45; Pl. Ex. 31 (hereinafter "Arb. Award") (Doc. 24-3 at 35, 37)). The arbitrator, however, was "not convinced that age discrimination occurred here." (Id. at 36). The arbitrator's award was affirmed both by the Court of Common Pleas of Luzerne County, and, on appeal, by the Commonwealth Court. (Def. Exs. 21, 22 (Docs. 22-4 at 52-56, 58-69). An appeal to the Pennsylvania Supreme Court is pending. (Def. Br. at 10, (Doc. 22 at 14).

On September 9, 2003, Fowler filed a complaint with the Pennsylvania Human Relations Commission (the "PHRC"), and an amended complaint followed. (Def. Ex. 23 (Doc. 22-4 at 71-77; Def. Ex. 24 (Doc. 22-4 at 84). Both complaints were dual filed with the Equal Employment Opportunity Commission (the "EEOC"). (Def. Ex. 23 (Doc. 22-4 at 77; Def. Ex. 24 (Doc. 22-4 at 79-89). The PHRC dismissed both complaints. (Def. Ex. 25 (Doc. 22-4 at 91-92, 93-94)). The EEOC issued Fowler a notice of right to sue. (Def. Br. at 10-11, (Doc. 22 at 14-15)). Thereafter Fowler filed this action in the District Court.

The complaint in this action (Doc. 1) raises eight (8) counts. Count I alleges that plaintiff was "regarded as disabled" by defendant and, thereby, defendant wrongfully discriminated against plaintiff in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Count II alleges that defendant retaliated against plaintiff for engaging in activity

protected under the ADA. Count III alleges that defendant engaged in wrongful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Count IV, apparently brought under the ADEA (although mislabeled as an ADA claim in the complaint), alleges that defendant retaliated against plaintiff for engaging in protected activity. Counts V through VIII mirror counts I through IV, except the former are asserted under state law, i.e., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et seq*. After the close of discovery, defendant moved for summary judgment. The magistrate judge recommends the motion be denied in part and granted in part. Both plaintiff and defendant filed objections to the report and recommendation, bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to the ADA, 42 U.S.C. § 12101, *et seq.* and the ADEA, 29 U.S.C. § 621 *et seq.* , the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § .1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636

(b)(1)(C); <u>see</u> <u>also</u> <u>Henderson v. Carlson</u>, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  <u>Id.</u>

Before the court is the magistrate judge's recommendation that we grant in part and deny in part defendant's motion for summary judgment. The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  <u>See</u> <u>Knabe v. Boury</u>, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  <u>Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.</u>, 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law.  <u>Id.</u>  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's

burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).

Once the moving party satisfies its burden, the burden shifts to the non-

moving party, who must go beyond its pleadings, and designate specific

facts by the use of affidavits, depositions, admissions, or answers to

interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Both Plaintiff Fowler and Defendant Dallas Borough object to the

report and recommendations.  The court will address each in turn.

**A. Statutory Filing Period**

In its motion for summary judgment, Dallas argues that summary

judgment is warranted based on Equal Employment Opportunity

Commissions ("EEOC") filing requirements.  Magistrate Judge Mannion

recommended that this court grant summary judgment with respect to any

event occurring prior to November 13, 2002.  However, the magistrate

judge considered whether or not events occurring prior to November 13,

2002 would be admissible at trial for evidentiary purposes and determined

that their admissibility would best be decided at trial.  Finally, the

magistrate judge considered Dallas' argument that events occurring prior

to March 13, 2002 would not be actionable based on the PHRA's 180 day

statutory filing period.  The magistrate judge noted that this argument was

first raised in Dallas' reply brief and was therefore waived for the purposes

of summary judgment.

Dallas argues that the magistrate judge erred by not recommending

that events prior to November 13, 2002 be deemed inadmissible for

evidentiary purposes.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 105 (2002) ( "[42 U.S.C. § 2000e-5(e)(1)] requires that a Title VII

plaintiff file a charge with the Equal Employment Opportunity Commission

(EEOC) either 180 or 300 days 'after the alleged unlawful employment

practice occurred.'"); see also Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 628 (2007).   These cases stand for the proposition that discrete acts of discrimination are not actionable if they fall outside the statutory filing period.  Dallas, however, fails to cite any legal authority indicating that an allegedly discriminatory event's admissibility is dependent upon its actionability.  To the contrary, Morgan clearly states that prior discrete acts of discrimination, though not actionable, are still admissible as background evidence.  536 U.S. at 113.  Accordingly, this court adopts the recommendation of the magistrate judge that events prior to November 13, 2002 are not actionable, and grants Defendant Dallas Borough's motion for summary judgment with respect to any such events. However, this court further agrees with the magistrate judge that events beyond the 300-day filing window may still be admissible as background at trial and declines defendant's invitation to make an evidentiary ruling at this juncture.

Dallas further argues that the magistrate judge erred by refusing to consider whether or not any of Fowler's claims were time barred by a 180-day filing period.[9]   Because Pennsylvania is a "deferral state" with an agency authorized to remedy federal employment discrimination (the

_____

[9] Defendant first raised this issue in its motion for summary judgment reply brief.  The magistrate judge, stating that arguments raised in the first instance via reply brief are waived for summary judgment purposes, declined to apply a cut-off date of March 13, 2002.  See Voci v. Gonzalez, 409 F.3d 607, 609 n.1 (3d Cir. 2005) (quoting Kopec v. Tate, 361 F.3d 772, 775 n.5 (3d Cir. 2004).  Dallas points to its opening brief where mention was made of a 180 day time period.  Although Kopec makes clear that "a passing reference to an issue [in an opening brief] will not suffice to bring that issue before [the reviewing court,]" this court will analyze the merits of Dallas' claim.  361 F.3d at 775 n.5.

PHRC), plaintiff's Title VII and ADEA claims are governed by the 300-day filing deadline. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 633(d)(2); <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 854 (3d Cir. 2000). Therefore, the magistrate judge properly concluded that the 180-day filing period was inappropriate.

## B. Res Judicata

Defendant Dallas Borough, in its motion for summary judgment, argues that Fowler's discrimination claims are barred by *res judicata* insofar as Fowler's collective bargaining unit won an arbitration award for him based on wrongful discharge. Defendant suggests that, because the arbitration award was reviewed in Pennsylvania state court, this action represents a second bite at the apple. The magistrate judge recommends that the motion for summary judgment be denied to the extent it is based upon arguments involving the preclusive effect of Fowler's arbitration award. Defendant makes several objections to this recommendation.

First, Dallas argues that Fowler was the sole grievant in the arbitration proceeding by the Police Bargaining Unit, and as such plaintiff is in privity with the parties to that arbitration. Dallas points out that the arbitrator found Fowler to be the grievant. Defendant cites <u>Handley v. Phillips</u>, 715 F.Supp. 657, 667 (M.D.Pa. 1989) for the proposition that a member of a collective bargaining unit can be bound by a decision against the unit. However, as <u>Handley</u> makes clear, privity is merely one element in a collateral estoppel argument, and is not itself preclusive. <u>Id.</u> at 666 (Collateral estoppel requires"1) the issue decided in the prior adjudication must be identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity

13

to litigate the issue in question in a prior action.")  In Handley this court faced an issue identical to that faced by the arbitrator–whether or not the collective bargaining agreement ("CBA") had been violated.  Id.  Here, the issue presented is not identical to that presented in the grievance action. In this action we must determine, not whether a CBA was violated (the issue taken up by the arbitrator), but whether federal and state discrimination statutes have been violated.

Dallas counters that since the CBA proscribes discrimination[10], the arbitrator's review of Fowler's discharge gave him ample opportunity to present the claims he makes here.  Fowler argues that the CBA does not give the arbitrator authority to consider statutory claims.  (Def. Ex. 26 at 10, (Doc. 22-4 at 105)).  The CBA states, in relevant part,"[t]he arbitrator shall neither add to, subtract from, nor modify the provisions of this agreement. . . .  The arbitrator shall confine himself to the precise issues submitted for arbitration.  The arbitrator has no authority to determine any other issues not submitted to him."  In his statement of the issues, the arbitrator lists, as one of the issues submitted to him, "whether the Borough discriminated against the grievant in relation to his discharge?"  (Def. Ex. 20, Arb. Decision at 2 (Doc. 22-4 at 7)).  Though the CBA generically prohibits "discrimination," and "discrimination" was one of the issues submitted to the arbitrator, it is clear from the arbitration decision that the federal

_____

[10] The CBA, operative from January 1, 2001 and December 31, 2005 states, "(a) The BOROUGH shall not discriminate against any POLICE OFFICER on the basis of race, creed, color, ancestry, sex, marital status, age, national origin, non-job related handicap or disability, union membership or office or political / non-political affiliation."  (Def. Ex. 26, Collective Bargaining Agreement of June 20, 2000 at 7 (Doc. No. 22-4 at 102).

statutes at issue here were neither referenced nor analyzed.  Even if the arbitrator's award had endeavored to examine Fowler's claims against the ADA and ADEA, this court would be very hesitant to consider giving preclusive effect to such a decision, given the factual nature of the claims.  See Alexander v. Gardner-Denver Co., 415 U.S. 36, 47-48 (1974)  (Noting, in the Title VII context, that first pursuing a remedy under a non-discrimination clause of a CBA should not preclude his statutory cause of action.)

Second, Dallas argues that Pennsylvania state court review of the arbitration award precludes litigation in federal court according to 28 U.S.C. § 1738.  Defendant notes that  the state court, in reviewing Plaintiff Fowler's arbitration award, had the authority to examine the proceeding for "constitutional deprivations."  Pa. State Police v. Pa. State Troopers' Ass'n, 656 A.2d 83, 85 (Pa. 1995)  ("The narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights.")  However, this "narrow certiorari scope of review" is not meant to exhaustively examine whether or not plaintiff has presented valid constitutional claims, but whether or not the arbitration itself accords with the constitution.  More important, Fowler's claims in this case are statutory, not constitutional.

Finally, Dallas argues that the arbitration award constitutes full compensation to Fowler.  Defendant notes that Plaintiff Fowler has received reinstatement with seniority, lost wages, lost benefits, lost emoluments, and back-pay from July 15, 2004.  (Def. Ex. 20, Arb. Decision at 45 (Doc. No. 22-4 at 50).  Defendant argues that punitive damages are not available and that liquidated damages are not appropriate since Fowler cannot prove wilfulness where all actions were upon advice of counsel.

15

A municipality, such as Defendant Dallas Borough, is not subject to punitive damages under the ADA.  42 U.S.C. § § 1981a(a)(2), (b)(1); Taylor v. Phoenixville School Dist., 113 F.Supp.2d 770, 777 (E.D. Pa. 2000).  Municipalities are also immune from punitive damages under the PHRA.  43 P.S. § 951 et seq.; Hoy v. Angelone, 720 A.2d 745, 751 (Pa. 1998).  However, muncipalities, such as Dallas Borough, are subject to liquidated damages under the ADEA, even though they are punitive in nature.  Potence v. Hazleton Area School Dist., 357 F.3d 366, 373 (3d Cir. 2004).  Therefore, summary judgment will not be granted on the argued basis of inability to impose damages.   There are sufficient facts on record for a reasonable jury to find that Dallas willfully discriminated against Fowler, despite Dallas' advice-of-counsel defense.

## C. ADA Liability

The magistrate judge recommends that defendant's motion for summary judgment be denied with regard to plaintiff's ADA "Regarded as Disabled" claim.  Defendant Dallas Borough objects, arguing that there is no evidence on the record that it considered Fowler disabled.  Rather, Dallas argues, the record shows only that it was concerned with Fowler's fitness for the particular job of police officer.  Alternatively, Dallas argues that the recommendation was in error because Fowler could not perform his essential job functions, rendering him "not qualified" within the meaning of the ADA.

Under the ADA an employer may not discriminate against a "qualified individual with a disability" based upon that individual's physical or mental impairments.  42 U.S.C. § 12112.  "To make out a prima facie case under the ADA, a plaintiff must establish that s/he (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an 'adverse employment

decision' as a result of that disability."[11] Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001) (citing Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir.1998) (en banc)).

Under the first element, a person is considered disabled if he has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). Here, Fowler contends that Dallas regarded him as disabled under section (C).

"[A] person is "regarded as" disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999). To make out such a claim, Fowler must show "either: (i) that despite having no impairment at all, [Dallas]] erroneously believed that [he] had an impairment that substantially limited one or more of [his] major life activities; or (ii) that [he] had a non-limiting impairment that [Dallas] mistakenly believed substantially limited one or more of [his] major life activities." Eshelman v. Agere Syss. Inc., 554 F.3d 426, 434 (3d Cir. 2009) (citing Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 514 (3d Cir.2001); Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)). Plaintiff argues that defendant erroneously viewed him as substantially limited in the major life activities of working and thinking. "It is undisputed that working and thinking qualify as 'major life activit[ies].'" Eshelman, 554 F.3d at 434 (citing 29 C.F.R. §

_____

[11] Whether Fowler has suffered an adverse employment decision is not at issue in this case. Accordingly, the court will only examine whether Fowler has a cognizable disability and is a qualified individual.

1630.2(i); <u>Taylor</u>, 184 F.3d at 307).

   "With regard to working, the regulations state that an individual is 'substantially limited' if a significant restriction limits a person's 'ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" <u>Eshelman</u>, 554 F.3d at 435 (quoting 29 C.F.R. § 1630.2(j)(3)(I)); <u>see also</u> <u>Murphy</u>, 527 U.S. at 517. A reasonable jury could not find that Dallas considered Fowler unable to perform a broad range of jobs. Though Dallas precluded Fowler from returning to work generally, the record indicates that the primary concern was for Fowler's capacity to act under stress, given that he was armed and responsible for the safety of the public and his fellow officers. This concern does not suggest that Dallas thought him unable to perform other jobs which are less stress-sensitive. This, however, does not end the inquiry into whether a reasonable jury could find that Dallas regarded Fowler as disabled.

   The magistrate judge found sufficient evidence on record that Dallas regarded Fowler as substantially limited in his capacity to think, recommending denial of summary judgment. Regarding the major life activity of thinking, "it is logical to assume that a person may qualify as substantially limited when their inability to think (i) arises from a qualifying 'physical or mental impairment'; that (ii) compromises their ability to work, or causes their employer to believe that their ability to work is compromised." <u>Eshelman</u>, 554 F.3d at 435 (citing <u>Taylor</u>, 184 F.3d at 307).

   The record evidence that Dallas regarded Fowler to have a mental impairment that compromised his ability to work is sufficient to overcome summary judgment. Taking the evidence in a light most-favorable to Fowler, as the non-moving party, a reasonable jury could interpret Mayor

18

Carroll and Councilman Oliver's concern that Fowler might not be 'sound'-minded as evidence that they considered Fowler mentally impaired. Dallas' actions keeping Fowler from returning to duty and forcing him to submit to mental evaluations, based on those concerns, could be found to show that Dallas believed Fowler's ability to work was compromised.

Under the second element of the prima facie case, "a 'qualified individual' is one 'who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.' 42 U.S.C. § 12111(8). To satisfy this requirement, a plaintiff must first demonstrate that s/he 'satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires.' Deane, 142 F.3d at 145. Second, a plaintiff must establish that s/he, 'with or without reasonable accommodation, can perform the essential functions of the position held or sought.' Id." Skerski, 257 F.3d at 278. Defendant does not argue that Plaintiff Fowler lacked skill or experience, therefore the court need only inquire into whether a reasonable jury could find that Fowler could perform the essential functions of police chief.

Fowler points to several pieces of evidence from which a reasonable jury could find that he was in fact able to perform the essential functions of a police chief. The grievance arbitrator concluded that Fowler had not been terminated for just cause, allowing an inference that he considered Fowler qualified. (Pl. Ex. 31, Arb. Decision at 43 (Doc. No. 24-3 at 35)). Doctor Kim's letters of May 18 and 26, 2004, which the magistrate judge considered equivocal evidence that Fowler was qualified,[12] indicate that

_____

[12]The magistrate judge found that Dr. Kim's letters were equivocal on the issue of qualification in the context of Fowler's ADEA claim. We note

Fowler had the potential to perform his job. (Def. Ex. 15 (Doc. No. 22-3 at 56); Pl. Ex. 28 (Doc. No. 24-2 at 73)) Fowler himself said he felt qualified to work. (Fowler Dep. at 11 to 13). Doctor Kim's letter of July 21, 2004, putting Fowler on tolerated status, could support a finding that Fowler was qualified. (Pl. Ex. 30 (Doc. No. 22-4 at 79)). Finally, Dr. Kim stated that as of July 1, 2004, Fowler could perform his duties without limitation. (Pl. Ex. 32 at 12 to 13 (Doc. No. 33-2 at 4-5)). Dr. Kim disagreed with the conclusion of Dr. Naidu's April 22, 2004 report–that Fowler was completely disabled in his left shoulder, precluding return to work. (Id. at 15 to 18).

Because a reasonable jury could find that Dallas regarded Fowler as disabled with respect to the major life activity of thinking, and because a reasonable jury could find that Fowler was a qualified individual within the meaning of the ADA–creating triable issues of fact on the contested elements of Fowler's prima facie case of disability discrimination–summary judgment is inappropriate. The magistrate judge's recommendation that summary judgement be denied on Plaintiff Fowler's disability discrimination claim is adopted.

**D. ADEA Liability**

The magistrate judge recommends that this court grant defendant's motion for summary judgment with respect to plaintiff's ADEA claim. Plaintiff Fowler objects, arguing that he has produced direct evidence of age discrimination, rendering the McDonnel-Douglas framework

––––––––––––––––––––

that, at this stage, while Dr. Kim's letters may be elusive on the issue of whether or not Fowler was qualified to perform the essential functions of his job, they are at least susceptible to a jury finding in his favor.

20

superfluous.[13]  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002) (quoting <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 121 (1985) ("the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination")).  Direct evidence is that from which a jury could find that "the decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision."  <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 338 (3d Cir. 2002) (quoting <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277(1989)).  The phrase, 'direct evidence' is somewhat misleading because, "certain circumstantial evidence is sufficient [to shift the burden of proof regarding causation], if that evidence can fairly be said to directly reflect the alleged unlawful basis for the adverse employment decision."  <u>Fakete</u>, 308 F.3d at 339 (internal quotations and citations omitted) (noting that comments of a decision-maker evincing discriminatory animus, though temporally dissociated from an adverse action, can be sufficient 'direct evidence').[14]

|       |       |       |       |       |       |       |       |       |

---

[13] Preliminarily, the magistrate judge found that a question of material fact existed as to whether or not Dallas Borough was a statutory "employer" under the ADEA.  (<u>Compare</u> Fowler Aff., Pl. Ex. 1 (Doc. No. 24-2 at 2) <u>with</u> Carr Aff., Def. Ex. 27 (Doc. No. 22-4 at 109)).  Defendant raised no objection to this finding and the court treats it as unopposed.

[14] The United States Supreme Court, in <u>Gross v. FBL Fin. Servs., Inc.</u>, __ U.S. __, 129 S. Ct. 2343, 2352 (June 18, 2009), recently has held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.  The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision."  This holding does not alter plaintiff's burden at the summary judgment stage.

Fowler states that during Mayor Carroll's first term in office, "[t]he Mayor said [Fowler] was too old and [Fowler] made too much money." (Fowler Dep. at 53:13-18). Further evidence of this attitude is found in Carroll's deposition where he indicated that aside from Fowler, no officers took multiple weeks off because, "[t]hey're younger. They didn't take time like that." (Carroll Dep. at 87:16-20). In the context of taking sick time, Carroll further stated, "I know that I'm 58, and I don't feel as fit as the younger guys do." (Id. at 89:6-12). Similarly, Councilman Oliver, according to Fowler, "wanted to know when [Fowler] was going to quit and get out of there." In response to Fowler's intention to remain until age sixty-five, Oliver allegedly said, "we'll make sure you get all your benefits if you leave right now." (Fowler Dep. at 54:13-17).

This evidence is sufficient for a reasonable jury to find that, more than making mere stray remarks, Dallas discriminated against Fowler based on his age. For this reason, summary judgment is inappropriate with respect to Fowler's ADEA claim.[15]

## E. ADA and ADEA Retaliation

The magistrate judge recommends that this court deny summary judgment on Plaintiff Fowler's ADA and ADEA retaliation claims. Defendant Dallas Borough has made no objections to these recommendations and the time for such filing has passed. Therefore, in order to decide whether to adopt the report and recommendation, we must determine whether a review of the record evidences plain error or manifest injustice. See, e.g., Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983);

---

[15] Plaintiff argues in the alternative that he has in fact made out a prima facie case of age discrimination. Because the court has found sufficient direct evidence to survive summary judgment, this alternative argument need not be addressed.

FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); 28 U.S.C. § 636(b)(1). After a careful review, we find neither a clear error on the face of the record nor a manifest injustice, and therefore, we shall adopt the magistrate judge's recommendations and deny summary judgment on plaintiff's ADA and ADEA retaliation claims.[16]

**Conclusion**

For the forgoing reasons, the report and recommendation of the magistrate judge will be granted in part and denied in part. The viable issues to be tried are: (1) whether defendant regarded plaintiff as disabled; (2) whether plaintiff is a "qualified" individual within the meaning of the ADA and ADEA; (3) whether defendant retaliated against plaintiff for taking actions protected by the ADA; (4) whether defendant is a statutory "employer" under the ADEA; (5) whether plaintiff's age was a but-for cause of his discharge; and (6) whether defendant retaliated against plaintiff for taking actions protected by the ADEA. The defendant's motion for summary judgment will be denied on each of plaintiff's claims. An appropriate order follows.

---

[16] The legal standards applicable to Plaintiff Fowler's ADA and ADEA claims are equally applicable to his respective PHRA claims of disability and age discrimination. See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Therefore, based on the analysis of Fowler's federal statutory claims above, summary judgment is denied with respect to Fowler's PHRA claims (Counts V through VIII).

23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN FOWLER,
        Plaintiff

    v.

BOROUGH OF DALLAS,
        Defendant

:   No. 3:07cv0276

:   (Judge Munley)

## ORDER

**AND NOW**, to wit, this 30th day of September 2009:

1.  The defendant's objections (Doc. 34) to the report and recommendation of Magistrate Judge Malachy E. Mannion (Doc. 30) are hereby **OVERRULED.**

2.  The plaintiff's objections (Doc. 33) to the report and recommendation are hereby **SUSTAINED**.

3.  The report and recommendation is **ADOPTED** with respect to plaintiff's Americans with Disabilities Act claims of discrimination and retaliation (along with plaintiff's associated Pennsylvania Human Relations Act (PHRA) claims).

4.  The report and recommendation is **NOT ADOPTED** with respect to plaintiff's Age Discrimination in Employment Act (ADEA) claim based on age discrimination (along with plaintiff's associated PHRA claim for age discrimination).  The report and recommendation is **ADOPTED** with respect to plaintiff's ADEA claim based on retaliation.

5. The defendant's motion for summary judgment (Doc. 19) is hereby **DENIED**.

**BY THE COURT:**

**s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**